UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SUSAN L. MILLER,

    Plaintiff,

vs.                                                              CASE NO.  3:06-cv-337-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Supplemental Security Income (SSI) disability payments.[1] Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #16, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #17, D's Brief). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated July 28, 2006 (Doc. #14). The Commissioner has filed the transcript of the proceedings (hereafter referred to as "Tr." followed by the appropriate page number). The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the

---

[1] The record reflects Plaintiff filed a prior SSI application on March 14, 2002. That claim was denied initially and Plaintiff did not pursue her application further (Tr. 15, 72-76).

Court in its making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **AFFIRMED**.

## PROCEDURAL HISTORY

In the instant action, Plaintiff filed an application for Supplemental Security Income disability payments on October 3, 2002 (Tr. 78-80). After being denied initially and upon reconsideration, Plaintiff requested a hearing, which was held on October 14, 2004 in Jacksonville, Florida before Administrative Law Judge (ALJ) William H. Greer (Tr. 785-816). Plaintiff appeared and testified at the hearing, as did vocational expert Paul Dolan. Plaintiff was represented by Ms. Pamela Collins-Dunmore, a non-attorney during the underlying administrative phase of this case. On March 25, 2005, ALJ Greer issued a hearing decision denying Plaintiff's claim (Tr. 12-25). The Appeals Council (AC) denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 5-7). Plaintiff's current counsel of record, Mr. N. Albert Bacharach, Jr., Esq., filed the instant action in federal court on April 12, 2006 (Doc. #1, Complaint).

## SOCIAL SECURITY ACT ELIGIBILITY
## AND THE STANDARD OF REVIEW

Plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. § 416.905.[2] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to

---

[2] Unless otherwise specified, all references to 20 C.F.R. will be to the 2006 edition.

those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920. Plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual

findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## ANALYSIS

Plaintiff is a forty year old female with past relevant work as a vendor selling fruit in a fruit market, as a maid cleaning and serving dinner to patients in an institutionalized setting, and as a sample selector and a creeler working in the carpet industry (Tr. 23, 131-36).[3] Plaintiff has a tenth grade education (Tr. 95, 105). In her Disability Report-Adult, Plaintiff alleged she was unable to work due to a "mental [and] nerve problem, panic attacks, [and] permanent back condition" (Tr. 89). In an earlier Disability Report-Adult, Plaintiff also alleged a heart condition and depression (Tr. 99).

Plaintiff raises two issues on appeal. First, Plaintiff asserts the ALJ committed error by failing to set out Plaintiff's step two severe impairments, thereby precluding the Court's review of whether the ALJ considered the Plaintiff's impairments in combination. Secondly, Plaintiff claims the ALJ erred in rejecting Plaintiff's treating physician's opinion in light of the substantial evidence supporting a severe mental health impairment. Defendant argues the ALJ made a proper step two finding and substantial evidence supports the ALJ's decision to discount the opinion of Dr. Dejuk. The Court will address each issue in turn.

---

[3]The record reflects Plaintiff was born November 10, 1966 (Tr. 78, 788).

**<u>Plaintiff's Severe Impairments</u>**

Plaintiff contends that the "ALJ's decision is devoid of any findings with regard to what impairment or impairments the ALJ found to be severe at step 2, [and as] a result this court can not review the ALJ's decision to determine: if the ALJ properly determined which impairments were severe at step 2; or, if he properly considered all of Miller's impairments in combination." (P's Brief at 5). The Court disagrees.

In this case, the ALJ found the "claimant does have 'severe' impairments as that term is defined in the Social Security Regulations, because her impairments have more than a minimal effect on her ability to engage in basic work-related activities." (Tr. 18). The sentence immediately preceding this quotation states, "An examination of the record indicates that the claimant has been diagnosed with the following: history of cervical strain; history of lumbar strain; history of endometriosis; degenerative changes in her lumbar spine; mitral valve prolapse; a personality disorder; an anxiety disorder; and a depressive disorder." (Tr. 17-18).

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. In this circuit, an impairment is not severe if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F. 2d 1026, 1031 (11th Cir. 1986). The claimant/plaintiff has the burden of proving that he or she has severe physical or mental impairment(s). *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The severity of a medically ascertained impairment must be measured in terms of

its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normalty." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). The ALJ is charged with determining the severity of a claimant's impairments. As noted, it is the effect an impairment has on one's ability to work that determines disability within the meaning of the Social Security Act. The effects of an impairment are measured by the limitations to the ability to work. The ALJ must consider a claimant's limitations to the ability to work when assessing the severity of an impairment. *See* 20 C.F.R. §§ 416.920(c), 416.921 (limitations from an impairment determine whether it is severe). The ALJ met this standard by clearly stating he found Plaintiff's impairments have more than a minimal effect on her ability to engage in basic work-related activities (Tr. 18).

The ALJ's statement finding Plaintiff had severe impairments, immediately following his identification of the Plaintiff's impairments, indicates that he considered Plaintiff's cervical strain, lumbar strain, endometriosis, degenerative changes in her lumbar spine, mitral valve prolapse, personality disorder, anxiety disorder, and depressive disorder to be severe impairments even if he did not specifically identify them as such (Tr. 18). This conclusion is further supported by the ALJ's finding that Plaintiff's impairments did not meet or equal any of the criteria set forth in sections 1.00, 6.00 or 12.00 of the Listing of Impairments (Tr. 18). Sections 1.00, 6.00, and 12.00 of the Listing of Impairments deal with musculoskeletal impairments, genitourinary impairments, and mental impairments, respectively. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.00, 6.00, 12.00. These sections of the Listing account for the ALJ's consideration of Plaintiff's cervical strain, lumbar strain, and degenerative changes in the lumbar spine, endometriosis, personality disorder, anxiety

disorder, and depressive disorder.

The ALJ's decision reflects his finding that Plaintiff had severe impairments and that he then proceeded with the other steps of the sequential evaluation process (Tr. 18-25). 20 C.F.R. § 416.920(a)(4)(ii), (c). A continued analysis in the sequential step evaluation process can infer failure to articulate a finding at an earlier step was harmless error. *Hutchison v. Bowen*, 787 F.2d 1461 (11th Cir. 1986). However, articulation of the specific impairments included in the step two finding, while preferable, is not essential for an adequate finding under the Regulations. As the Eleventh Circuit has stated, "the ALJ could not have committed any error at step two because he found that [the claimant] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two." *Council v. Barnhart,* 127 Fed. Appx. 473 (Table), No. 04-13128, at 4 (11th Cir. Dec. 28, 2004)(copy attached)*; see also Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987) (stating that the finding of any severe impairment is enough to satisfy the requirement of step two). The ALJ found in Plaintiff's favor at step two.

In determining whether an individual's physical or mental impairments are of sufficient severity to establish disability under the Regulations, the ALJ is required to consider all of the individual's impairments regardless of whether each impairment on its own is found to be severe. 20 C.F.R. § 416.923. The Eleventh Circuit has held that where "a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

Here, the ALJ listed Plaintiff's numerous impairments, and then stated that "[a]fter

considering the documentary evidence, and the testimony presented at the hearing the Administrative Law Judge finds that the claimant does have "severe" impairments. . . " (Tr. 18). The ALJ also stated, "Upon review of the evidence, the Administrative Law Judge finds that the claimant's impairments do not meet or equal any of the criteria set forth in sections 1.00, 6.00, or 12.00 of the Listing of Impairments. The claimant has not displayed the specific clinical and laboratory findings required by these sections or any other sections." (Tr. 18). The ALJ then proceeded to assess Plaintiff's residual functional capacity and her ability to return to past relevant work under step four.

An ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Statements of the ALJ may make clear that he has considered the impairments in combination. *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986); *accord, Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding that a claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" indicates proper consideration of impairments in combination).

In the instant case, Plaintiff asserts the ALJ erred in his step two finding, which flows over into a step three error, precluding this Court from ascertaining whether the ALJ considered Plaintiff's impairments in combination. Apparently, Plaintiff finds error that the ALJ did not articulate the exact words "an impairment or combination of impairments" in his step three finding. However, Plaintiff's seemingly overlooks legal precedent that accepts overall statements in the ALJ's decision may make clear the ALJ's consideration of impairments in combination. *Wheeler*, 784 F.2d at 1076. Here, the ALJ listed Plaintiff's

severe impairments, thoroughly discussed the medical evidence, and then concluded that Plaintiff was not disabled under the Social Security Act (Tr. 15-25).  Thus, under *Wheeler* and *Jones*, it is clear from the ALJ's analysis and wording that he was aware of all Plaintiff's impairments and considered them in combination as required under 42 U.S.C. § 423(d)(2)(B).

**<u>Treating Physician's Opinion</u>**

Plaintiff's asserted issue of error here concerns whether the ALJ gave proper weight to the opinion of Plaintiff's treating physician, Dr. Miguel Dejuk, M.D.

In this case, the ALJ specifically referred to Dr. Dejuk's letter dated January 22, 2003, wherein Dr. Dejuk "expressed the opinion that the claimant was not able to work due to her mental condition and medications she was taking." (Tr. 22).  The ALJ stated in his decision that no weight was given to the opinions expressed by Dr. Dejuk because he found Dr. Dejuk's opinions were inconsistent with the evidence of record (Tr. 22).  The ALJ further noted that Dr. Dejuk's specialty is internal medicine, not psychiatry and the claimant's mental health providers had not found the claimant disabled or prohibited her from working (Tr. 22).

The case law and the Regulations require the ALJ to give substantial weight to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580,583 (11th Cir. 1991); 20 C.F.R. § 416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it

controlling weight. 20 C.F.R. § 416.927(d)(2). The weight afforded a medical source's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. 20 C.F.R. § 416.927(d). The ALJ may consider a physician's medical specialty and decide to give more weight to the opinions of physicians in their areas of medical expertise and specialty. 20 C.F.R. § 416.927(d)(5).

The United States Court of Appeals for the Eleventh Circuit has concluded "good cause" exists to discount a treating physician's opinion when: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; <u>or</u>, (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004) (emphasis added).

Plaintiff argues that the ALJ committed reversible error because he stated inadequate reasons as to why he rejected Dr. Dejuk's opinions (P's Brief at 11-12). However, a review of the record reveals there is evidence to support a finding contrary to the January 2003 opinion of Dr. Dejuk and there is evidence within Dr. Dejuk's own treatment notes that is inconsistent with the limitations he assessed.

As to the other evidence of record, Plaintiff has been seen by several mental health providers, some of whom were medical doctors specializing in psychiatry and others who were licensed clinical social workers. (*See, e.g.*, Tr. 166-193 & 506-747, treatment notes from Putnam Behavioral Healthcare; Tr. 293-300, Flagler Hospital Psychiatric Center treatment notes). Upon reinitiating treatment with Putnam Behavioral Healthcare in July

1999,[4] Plaintiff saw Dr. Emanuel Martinez, M.D., who performed a psychiatric examination and diagnosed Plaintiff with a panic disorder with agoraphobia; a major depressive episode, recurrent and moderate; and, rule out histrionic personality disorder (Tr. 184-85).  He found Plaintiff's then current Global Assessment Functioning (GAF) score was 60 and her highest score during the past year was 90 (Tr. 185).[5]  The ALJ correctly noted Dr. Martinez did not record any limitations on Plaintiff's ability to work (Tr. 22).  Review of the record reveals Plaintiff saw various counselors and doctors, off and on, at Putnam Behavioral Healthcare from July 1999 through August 2004 (Tr. 166-193, 506-747).  Plaintiff's mental symptoms waxed and waned, but no mental health provider indicated restriction on Plaintiff's work activity or her ability to perform work-related functions

At the request of the Division of Disability Determinations, Plaintiff was seen by Dr. Louis Legum, Ph.D., of the North Florida Psychological Services on December 3, 2002 for evaluation regarding Plaintiff's levels of cognitive, emotional and adaptive functioning.[6]

---

[4] Plaintiff advised Dr. Martinez that she was last seen at the mental health clinic approximately four to five years ago (Tr. 184).

[5] The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning."  A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships."  A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

[6] The Court notes that pages 331 and 332 of the transcript are missing from the record.  These pages apparently comprise the final pages of Dr. Legum's report. However, the Court was able to review the first four pages of Dr. Legum's report.

Plaintiff reported she had a disposition to slash her arms as a way of discharging anger toward her husband when they fight (Tr. 330). Plaintiff reported she used to smoke marijuana to calm her down, which she had last done approximately one month prior to the consultative examination (Tr. 330). The ALJ's decision and Plaintiff's brief both reflect that Dr. Legum assessed Plaintiff with a GAF score of 55-60 and diagnosed chronic pain disorder due to general medical and/or psychological factors, dysthymic disorder by self-report, polysubstance abuse/dependence vs. alcohol abuse/dependence (provisional), partner related problems, personality disorder NOS with histrionic, borderline, and passive-dependent features (provisional) (Tr. 22, P's Brief at 11). Plaintiff's brief also points to Plaintiff's asserted medical problems and a self-reported loss of vocational and functional capabilities.

Plaintiff was evaluated by treating psychiatrist Dr. Umesh Mhatre on August 12, 2003 (Tr. 527-29). Dr. Mhatre found Plaintiff's mood "only slightly depressed" and Plaintiff's affect was appropriate (Tr. 529). Dr. Mhatre diagnosed Plaintiff with dysthmia, rule out major depressive disorder, recurrent, severe with psychotic features, and rule out panic disorder with agoraphobia (Tr. 529). Her current GAF was found to be 65.

Plaintiff's records were reviewed and assessed for mental impairments throughout the relevant time period by no less than three separate clinical psychologists. Janice H. Miller, Ph.D., completed a psychiatric review technique form and a mental residual functional capacity assessment on May 12, 2002 (Tr. 234-251). Steven Wise, Ph.D., and Susan Conley, Ph.D. completed these same assessments on December 12, 2002 (Tr. 333-350) and February 26, 2003 (Tr. 487-505), respectively. These reviewing psychologists found Plaintiff's mental limitations were either moderate, mild or non-existent in the areas

of functional limitations.

Inconsistencies exist between Dr. Dejuk's treatment notes for Plaintiff and the limitations he expressed in his opinions. For example, Dr. Dejuk completed a Mental Impairment Questionnaire on January 31, 2001, in which the responses he marked indicated the Plaintiff had a poor or no ability to perform any work-related activities (Tr. 354-61). However Dr. Dejuk's treatment records from September 2000 to February 2001 do not mention any treatment for a mental impairment (Tr. 466-86). The closest possible reference to even any anxiety-type symptom is a note on December 12, 2000 that Plaintiff stated her heart "begins to race on and off even when she is sitting" (Tr. 471). From September 2000 to February 2001, Dr. Dejuk's records reflect that he primarily treated Plaintiff for lower back pain (Tr. 475), stomach bacteria (Tr. 475), heart problems, rapid heart beats (Tr. 471-72), echocardiogram (Tr. 474), headaches (Tr. 467, 470, 472, 486), and blood pressure (Tr. 468-69). Dr. Dejuk's treatment notes during this time period do not support his findings that Plaintiff had "no useful ability to function in this area" to perform work-related activities because of her mental impairments (Tr. 357, 466-86).

On May 3, 2002, Dr. Dejuk prepared another mental health questionnaire, this time using a Florida Department of Health form, indicating that Plaintiff had frequent episodes of panic attacks because of her anxiety-related disorder (Tr. 390-93). In this May 2002 mental questionnaire, Dr. Dejuk stated that Plaintiff had been experiencing anxiety–related disorder attacks since September 11, 2000 (Tr. 390). However, as explained above, there was no mention of anxiety or panic attacks in Dr. Dejuk's treatment notes dated September 11, 2000 (Tr. 486). On September 11, 2000, Dr. Dejuk's treatment notes reflect complaints of stomach pain, sinus problems and Plaintiff's past medical history of mitro valve prolapse,

hepatitis, breast cancer, colonoscopy and knee surgery (Tr. 486). Furthermore, Dr. Dejuk's treatment notes from September 11, 2000 to February 14, 2001 contain no mention of any anxiety or panic attacks (Tr. 466-86). Although Dr. Dejuk said Plaintiff started having anxiety-related disorder attacks or episodes on September 11, 2000, his treatment notes do not show that she began experiencing panic attacks until the note on October 1, 2001 (Tr. 444). Additionally, although Dr. Dejuk reported that Plaintiff's concentration and memory were "very poor," his treatment notes do not support this finding. For example, Dr. Dejuk's treatment notes from January 23, 2002 up to April 24, 2002 do not contain any references concerning a poor memory, panic attacks or anxiety disorder (Tr. 389-422). In fact, Plaintiff's medical records during this time discuss only complaints of lower back pain (Tr. 387, 400, 404, 422), therapy treatments for back pain (Tr. 394-95, 401, 403-04, 410, 412-13, 420-21), prescription refills for back pain (Tr. 405, 411), prescription refills for arthritis (Tr. 389), hormone level check-up for mood swings (Tr. 397, 419), liver enzymes test (Tr. 405), and a urine test (Tr. 396). On May 3, 2002, the treatment notes indicated Plaintiff complained of not wanting to leave her house (Tr. 388). The next reference to any type of mental disorder was on May 13, 2002, where Plaintiff complained of trouble with her nerves, which was 10 days after Dr. Dejuk completed 2002 mental assessment (Tr. 386). Similarly, Dr. Dejuk's treatment records do not support his statement that he witnessed more than 10 attacks/episodes (Tr. 390). From October 2001 to May 3, 2002, Dr. Dejuk treatment notes contain four references to Plaintiff having panic attacks or anxiety (Tr. 444, October 1, 2001, "more panic attacks"; Tr. 440, October 8, 2001, "here because she still having panic attack...states she had one yesterday"; Tr. 439, October 11, 2001, "here for panic attacks"; and, Tr. 434, October 25, 2001, "states she had a panic attack and anxiety

14

when around a crowd of people...just had severe panic attack about a few minutes ago"). On October 22, 2001, there is a reference that Plaintiff's chest hurt and she felt "wired" (Tr. 435). During the same time period, there are three references to the medicines and vitamins helping with the panic attacks (Tr. 429, November 8, 2001, "she feel vitamins [are] helping her, [she] stated she feels a little better [with] panic attack[s]"; Tr. 427, November 19, 2001, "here for refills. . .she feels the meds are helping her [complaints of] panic attacks"; and, Tr. 408, February 14, 2002, "xanax and elavil are keeping her calm"). If Dr. Dejuk personally witnessed Plaintiff's panic attacks and/or anxiety attacks, he did not record it in his treatment records (Tr. 388-422). Because Dr. Dejuk's treatment records do not support the severity of the mental limitations articulated on the Florida Department of Health mental assessment form, the ALJ had good cause for discounting his opinions.

On January 22, 2003, Dr. Dejuk submitted a "to whom it may concern" letter stating that Plaintiff could not be under any type of pressure, she had a tendency to inflict pain upon herself, and would not be able to work because of her mental condition and medications (Tr. 362). As Dr. Dejuk failed to provide sufficient evidence to support his opinion, the ALJ properly discounted it.

Substantial evidence supports the ALJ's factual finding that Dr. Dejuk's opinions were inconsistent with the evidence in the record, including his own treatment notes. The Court specifically notes the Psychiatric Evaluation at Putnam Behavioral Healthcare that was performed by Dr. Umesh Mhatre, M.D., on August 12, 2003, contains findings that contradict the severity of Plaintiff's impairments as stated by Dr. Dejuk. (*See* Tr. 527-29). Dr. Mhatre's assessment is more recent than any of Dr. Dejuk's opinions and is more

15

consistent with the opinions stated by the state agency reviewing clinical psychologists, as well as that stated by treating psychiatrist, Dr. Emanuel Martinez in 1999.[7] Furthermore, Dr. Mhatre is a medical doctor, whose specialty is psychiatry.[8]  Thus, in accordance with the law of this circuit, good cause existed to discount and give no weight to Dr. Dejuk's opinions.

## CONCLUSION

Upon review of the ALJ's decision, and the underlying record, the Court finds substantial evidence supports the ALJ's factual findings.  Further, the ALJ adhered to the Regulations in making his step two determination and applied the correct law in discounting Dr. Dejuk's opinions.  For the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th   day of September, 2007.

Copies to:
Counsel of Record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

---

[7] *See* discussion, *supra*, at 12-13.

[8] Florida Dep't of Health, Search for Practioner Profile Information, http://ww2.doh.state.fl.us/irm00profiling/SEARCHFORM.ASP (last visited September 28, 2007).